**LONGMAN LAW, P.C.**
Howard T. Longman, Esq.
354 Eisenhower Parkway, Suite 1800
Livingston, NJ 07039
Tel: (973) 915 2315
Fax: (973) 915 2319
Email: hlongman@longman.law

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EUNICE ADLER and JUDITH LOOKER,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC.,<br><br>Defendant. | CIVIL ACTION NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Eunice Adler ("Plaintiff Adler") and Judith Looker ("Plaintiff Looker") (collectively, "Plaintiffs"), by and through their undersigned counsel, on behalf of themselves and all others similarly situated, upon personal knowledge with respect to themselves, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other matters allege as follows:

### NATURE OF THE ACTION

1.      Plaintiff Looker owns a 2017 model year Honda CRV and Plaintiff Adler leases a 2018 model year Honda CRV. Plaintiffs Looker's and Adler's Honda CRVs were each manufactured, marketed, and warranted by American Honda Motor Company, Inc. ("Defendant" or "Honda"). Honda installed a defective air conditioning system ("AC System") in each of their

Honda CRVs at the time of manufacture. Honda concealed information about the AC System defect at the time of sale or lease and thereafter.

2.     The defect manifests when the AC System no longer generates cool air because of refrigerant leaks and part failures requiring replacement of AC System parts (the "Defect"). Depending on the failed parts and extent of repairs, costs charged by Honda dealers to enable the AC System to function again range from about $200 to $2000.

3.     The defect stems from a transition to a new type of chemical refrigerant, R-1234yf (Tetrafluoropropene) that replaced R-134a (Tetrafluoroethane) in air conditioning systems in vehicles sold in the U.S.

4.     All model year 2017-2021 Honda CRVs (the "Class Vehicles") were manufactured with defective AC Systems that use R-1234yf refrigerant.

5.     R-1234yf is not compatible with R-134a.  They cannot be used together in the same air conditioning system.  Air conditioning systems designed for R-1234yf use a different type of service port to prevent contamination by mixing the two refrigerants in the same system.

6.     Among other factors, R-1234yf is less efficient than R-134a. In warmer temperatures, R-1234yf functions at higher pressures, or pounds per square inch ("psi"), in the air conditioning system than R-134a.

7.     Because of differences of R-1234yf and R-134a refrigerants, air conditioning systems designed for R-1234yf require considerable upgrades to component quality and robustness.

8.     The component quality and robustness of AC Systems installed in vehicles Honda manufactured were not sufficiently upgraded to handle R-1234yf. As a result, AC Systems in Class Vehicles failed prematurely, requiring costly replacement of failed parts.

9.      The expected life of an AC System in a Class Vehicle is at least ten years, consistent with the expected life of the vehicle itself.

10.     In fact, other than periodic replacement of a "dust and pollen filter" no scheduled maintenance to AC System component parts is mentioned in the 679-page 2018 Honda CRV Owner's Manual.

11.     The Defect manifested in Plaintiff Looker's 2017 Honda CRV at least as early as May 2021. She took her Class Vehicle to have the AC repaired on July 7, 2021 when the vehicle had just 27,272 miles on the odometer and was in service only four years and four months.  The AC System in Looker's vehicle was leaking refrigerant requiring replacement of the compressor, condenser and clutch. Ms. Looker was required to pay $1896.10 out of pocket for the repair, including $1,709.89 for labor and parts and $68.40 for shop supplies and an "environmental disposal fee."

12.     The Defect manifested in Plaintiff Adler's 2018 Honda CRV in September 2021 when the Class Vehicle had just 57,687 miles on the odometer and in service for merely 35 months.  Similarly, the AC System in Ms. Adler's vehicle was leaking refrigerant requiring replacement of the high side line. Adler was required to pay $450.14 out of pocket for the repair.

13.     Just weeks later, in October 2021, with the odometer at 60,061 miles, the AC System in Plaintiff Adler's Class Vehicle failed a second time and required replacement of the AC System's failed blower motor.

14.     Had Honda not concealed the Defect, Plaintiff Looker would not have purchased, and Plaintiff Adler would not have leased, a Class Vehicle.

15.     As reflected by numerous online postings, including examples below, premature failure of air conditioning systems that utilize R-1234yf type refrigerant is a widespread and

pervasive problem for purchasers and lessees of Honda vehicles, including the 2018 model year Honda CRV.

16.     Further, a consumer class action alleging similar air conditioning system defects in 2016-2021 model year Honda Civics ("Civics") is currently pending against Honda in the U.S. District Court for the Central District of California. *See Andre Wong v. American Honda Motor Co., Inc. et al*, No. 2:19-cv-10537 (C.D. Cal. Dec 12, 2019).

17.     Even more significantly, soon after the filing of a consumer class action complaint alleging similar air conditioning system defects in 2016-2018 model year Honda Civics, Honda extended its three-year warranty covering failed 2016-2018 model year Honda Civic air conditioning system condensers to ten years. (the "Warranty Extension"). *See* E*lkins v. American Honda Motor Co., Inc. et al*, No. 8:19-cv-00818-JLS-KES (C.D. Cal).

18.     Plaintiffs here allege that AC Systems installed in 2017-2021 model year Honda CRVs are similar in design, materials, and workmanship to the defective air conditioning systems installed in 2016-2018 model year Honda Civics subject to the Warranty Extension.

19.     Plaintiffs complain herein for Honda's violations of the New Jersey Consumer Fraud Act, violation of the Magnuson-Moss Warranty Act, breach of express warranty, breach of implied warranty, negligence, unjust enrichment and for injunctive relief.

20.     Plaintiffs therefore seek (a) recovery of out-of-pocket damages of Plaintiffs and members of the proposed classes caused by the defective AC Systems Honda installed in their CRVs; and (b) injunctive relief requiring Honda to extend its warranty coverage to include repair and replacement of defective AC Systems on 2017-2021 model year Honda CRVs for at least ten years. This extended warranty coverage should not be limited to failed condensers only, but

should cover all parts of the defective AC system and should not require payment of a diagnostic fee when extended warranty coverage is granted.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2) ("CAFA"), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

22.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant transacts business in this jurisdiction and both plaintiffs reside in this jurisdiction.

24.     This Court has personal jurisdiction over Defendant because Defendant transacts business in this District under the name Honda North America, Inc. such that it has sufficient minimum contacts in this District and the state.

## PARTIES

25.     Plaintiff Adler is the lessee of a 2018 Honda CRV and was required to pay out-of-pocket for repair of her Class Vehicle's defective AC System. Plaintiff Adler is a resident of New Jersey.  The VIN number of her vehicle is 2HKRW6H35JH226496.

26.     Plaintiff Looker is the owner of a 2017 Honda CRV and was required to pay out-of-pocket for repair of her Class Vehicle's defective AC System.  Plaintiff Looker is a resident of New Jersey. The VIN number of her vehicle is 5J6RW2H50HL016706.

27.     Defendant Honda is a Delaware corporation that does business in all 50 states, with its principal place of business in Torrance, California. Honda oversees the manufacture, sale

and servicing of Honda and Acura vehicles and other Honda products in North America, including the Class Vehicles.

## SUBSTANTIVE ALLEGATIONS

### A.    The AC System Defect in Class Vehicles

28.    The AC System Honda installed as original equipment in Class Vehicles is comprised of three main components: a compressor, a condenser, and an evaporator. These components are connected to each other by hoses and lines to circulate chemical refrigerant, R-1234yf, that cools air which the blower circulates into the vehicle cabin.

29.    Transition to R-1234yf began in or about 2010 when Chevy, Buick, GMC, and Cadillac announced that air condition systems in their 2013 model year vehicles would use R-1234yf.  In 2015, Honda first began installing air conditioning systems designed for R-1234yf use in its Honda Fit EV.[1]

30.    Because of differences in the makeup and properties of R-1234yf and R-134a refrigerants, air conditioning systems designed for R-1234yf use require enhanced robustness.

31.    AC Systems installed in Class Vehicles were not sufficiently modified to handle R-1234yf and are prone to premature failure.

32.    Defective materials, workmanship, and/or design, render the AC System in Class Vehicles unable to withstand the pressures and forces experienced during normal, expected, and foreseeable usage.

33.    The Defect manifests with the AC System unable to generate cool air. This failure is commonly caused by R-1234yf leaking from the AC System. Moreover, refrigerant leaks in

---

[1] https://www.vehicleservicepros.com/service-repair/underhood/article/12056013/current-list-of-oes-that-use-r1234yf-refrigerant (last visited January 5, 2022).

Class Vehicles are not isolated to one or two defective components. The leaks occur throughout the AC System.

**B.     Honda's Unconscionable 36 Month 36,000 Mile New Vehicle Warranty**

34.     Honda provides a 36-month, 36,000-mile New Vehicle Warranty on the Class Vehicles.[2]  According to the warranty, Honda will repair or replace any part that is defective in material or workmanship under normal use.  All repairs/replacements made under this warranty are free of charge.

35.     The AC Systems installed by Honda in Class Vehicles were defective at the time of manufacture.  Repairs to defective AC Systems in Class Vehicles should be covered under the new vehicle warranty without charge to the Plaintiffs or the Classes.

36.     When Honda's basic warranty on Class Vehicles expires at 36,000 miles or 36 months in service, whichever comes first, Honda refuses to compensate Class members for costs of repair that can reach anywhere from $150.00 to $2,000.00 to replace their Class Vehicle's defective AC System parts.

37.     Even after paying for repairs to and replacement of the AC System, Class members are still at risk of experiencing ongoing failures of other defective AC System parts. Further, Honda replaces defective failed parts with defective new parts so that AC System failures in Class Vehicles are ongoing.

**C.     Manifestation of the AC System Defect in Plaintiff Looker's Class Vehicle**

38.     The Defect in the AC System in Plaintiff Looker's Class Vehicle manifested at least as early as the spring of 2021.

---

[2] *See e.g.*, https://owners.honda.com/Documentum/Warranty/Handbooks/AWL_02971_2017_Honda_Warranty_Basebook__KA__FINAL.pdf (last visited February 2, 2022).

39.     On July 7, 2021, Plaintiff Looker took her Class Vehicle to Route 23 Honda in Pompton Plains, New Jersey (the "Route 23 Dealership") to fix the cause of the AC System failure. When the dealership performed repairs on her vehicle's AC System, her Class Vehicle had just 27,272 miles on the odometer and was in service for only four years and four months.

40.     The Route 23 Dealership service person determined the AC System in Plaintiff Looker's Class Vehicle was leaking refrigerant.  According to her invoice, the AC System condenser, compressor and clutch required replacement and were replaced at the Route 23 Dealership.

41.     Plaintiff Looker was required to pay the Route 23 Dealership $1,896.10 total, including $1,709.89 for the AC System repairs and an additional $68.40 for "shop supplies" and an "environmental disposal fee."

42.     Because Plaintiff Looker believed that the AC System in her Class Vehicle should not have leaked refrigerant and failed after so little use, she contacted Honda seeking reimbursement from Honda for the cost of the AC System repair.

43.     Months later, Plaintiff Looker heard back from a Honda representative, who indicated that Honda was willing to reimburse 75% of the AC System repair cost. However, in January of 2022, Honda recanted and said it would reimburse Plaintiff Looker for only 50% of the cost of her AC System repair.

44.     Ms. Looker believes the AC System in her Class Vehicle was defective at the time of manufacture and that Honda's New Vehicle Warranty should fully cover the repair, and therefore is now seeking, among other things, reimbursement of 100% of the cost of the AC System repair to her Class Vehicle.

45.     Had Honda disclosed information about the defective AC Systems in Class Vehicles, Plaintiff Looker would not have purchased a Class Vehicle.

**D.     Manifestation of the AC System Defect in Adler's Class Vehicle**

46.     The Defect in Adler's Class Vehicle manifested in September 2021 with the AC System leaking refrigerant and unable to generate cool air.  Ms. Adler's Class Vehicle had 57,687 miles on the odometer and was in service for just 35 months.

47.     Plaintiff Adler's Class Vehicle was taken to Paul Miller Honda of West Caldwell, New Jersey (the "West Caldwell Dealership") by her husband Jeffrey Adler ("Mr. Adler") for diagnosis of the failure.  According to the West Caldwell Dealership, the "high side line" of the AC System in Adler's Class Vehicle was damaged by a refrigerant leak and needed to be replaced.

48.     The high side line was replaced at the West Caldwell Dealership on September 17, 2021 (the "September 17 repair"). Ms. Adler paid the West Caldwell Dealership $450.14.

49.     Notably, while at the West Caldwell Dealership, Mr. Adler was warned by service personnel that failure of one AC System part suggested that further failures would occur in other AC System parts.

50.     Believing the September 17 repair resolved the AC System problem, in late September 2021, Plaintiff Adler extended her lease of the Class Vehicle for an additional 12 months.

51.     Just weeks later, in October 2021, with the odometer at 60,061 miles, the AC System in Adler's Class Vehicle failed a second time and required replacement of the AC System's failed blower motor.

52.     The second AC System failure prompted Mr. Adler to research problems with air conditioning systems in vehicles manufactured by Honda. Mr. Adler found numerous posts on the internet regarding or complaining of air conditioning system failures in Honda vehicles.

53.     Thereafter, in October 2021, Mr. Adler took the Class Vehicle back to the West Caldwell Dealership for a second repair of the AC System. He informed the service person about the numerous online postings of various problems with Honda CRV air conditioning systems, including the AC System of the 2018 model year CRV.

54.     In response, the West Caldwell Dealership service person informed Mr. Adler that the AC System's blower motor on the Class Vehicle needed to be replaced and that he would speak with Honda's Regional Sales Manager about discounting the cost of the blower motor replacement.

55.     The service person reported that having spoken to Honda's Regional Sales Manager, Honda would discount the blower motor replacement cost by 90% so that the Adler would be required to pay $13.35 or 10% of the regular price.

56.     The service person then indicated in words and substance that the AC System in Adler's vehicle would continue to have problems, meaning that Adler would incur ongoing costs for AC System failures of her Class Vehicle.

57.     Had Honda disclosed the AC System defect, Adler would not have leased her Class Vehicle, nor would she have extended the lease of her Class Vehicle following the September 17 repair.

### E.        Online Complaints Posted by Putative Class Members

58.        Honda CRV owners and lessees have posted numerous complaints about their

failing AC Systems on forums across the Internet, including the following examples:[3]

> Just brought my 2017 CR-V with 27,200 miles on it for an A-2 Service. The A/C has not been cooling at its normal functionality so I brought that and they diagnosed it ($135 diagnosis fee). I was told the AC compressor and clutch needed to be replaced, which would cost $1600. There is a 4-week backorder for parts as well.
>
> My 3 years of warranty expired in Feb 2020, even though I am within the 30,000 miles limit.  No extended warranty.

*   *   *

> Wanted to share that my 2018 was also diagnosed with a leaking compressor…at only 37,000 miles.  The leak also corrupted the clutch, so I was told, and had to be replaced.  The estimated cost similar to that of MCT.  Obviously, this doesn't site[sic] well with me. I've owned seven Hondas going back to 2000 and this is the second of thise[sic] to have an A/C compressor fail. And I've never experienced this type of failure on any other brand of car I or my family have owned.
>
> Been playing phone tag with Honda America Customer Service for three weeks now…very disconcerting.

*   *   *

> Count me as another victim.  My 2017 CR-V with only 27,000 miles has all of the sudden developed a leaky evaporator in the A/C System.  Cost of repairs approx. 2k.  Of course about six months out of warranty.  This A/C uses the newer 1234yf refrigerant and few shops can work on this other than the dealer.  I'm filing an appeal for Honda to cover this through my dealer, but have there been any recalls or class action lawsuits for this Honda A/C problem? Very disheartening as I've enjoyed this vehicle very much.

*   *   *

> Yes. Mine doesn't work either.  2017 Honda CRV Touring.  I have 20,000 miles and no a/c.  I've had the vehicle for 39 months.  Just past the warranty.  I've read

---

[3] These examples include complaints from three different forums (crvownersclub.com, cargurus.com, and reddit.com), selected because they are concise. All these forums have lengthy threads full of such complaints, and Plaintiffs' attorneys have also encountered many other forums that are similarly full of such complaints about CRV AC systems failing due to refrigerant leaks and related problems.

many forums and there are many complaints with this CRV about the a/c system. So far no recall for this issue. Please fix soon.

\* \* \*

My 2017 Handa[sic] CRV also has AC issues. They want $2,000.00 out of my pocket to replace the air compressor. Naturally it's out of warranty. Honda customer service doesn't call you back. They can't recall because the part "because it's not a safety issue" but they are aware of the complaints. How about a recall of good faith on backing their product. I will never, ever, ever buy a Honda again.

\* \* \*

My 2017 Touring CRV air conditioner stopped blowing cold air just 4 months after warranty ran out. They tell me it's going to cost over $500 dollars to just evaluate the problem. I took it to my local mechanic and he does not have the $20,000 mod of equipment to check the newest cars so I'm stock with dealer's prices. Seems unusual to lose ac on a car with 15,000 miles on it.

59.     Similarly, online posting show Honda has offered partial coverage for AC System

repairs like they did for plaintiffs, for example:

It appears from a little google searching that this is a known issue with the CRVs. Has anyone else experienced AC issues with their CRV with such low mileage? Unfortunately, the car is just past its 3 year warranty and they have quoted $1400 US to fix it. This is utterly ridiculous for a car that has less than 30K miles on it and is barely over 3 years old. I am waiting for a call back from a service manager but was wondering if there are any secret warranties for this issue, or whether asking for goodwill assistance is even worth it.

Update 1: The dealership service manager agreed that this should be forwarded on to Honda corporate, but he can't promise how much they will cover. At least it wasn't a hard no!

Update 2: they are going to cover 80%, the total cost is $300 now. That is acceptable in my book. It would be nice if they offered this upfront, but I guess business is business. Thanks for the advice!

\* \* \*

The ac of my 2018 crv[sic] has been leaking inside the compressor. The warrantee expired Nov. of 2020, and I only drove around 7600 miles. The diagnostics[sic] costed almost $400, and I asked the dealer to do something. The dealer talked to Honda Company and agreed to cover 75% of the repairment - - accept it or leave it. No coverage for the diagnostic cost at all.I[sic] told them to let the decision maker be awarded: recall for malfunction AC for 2017-2018 hinder[sic] crv.

60.     Given the prevalence of air conditioning system failures in Honda vehicles including but not limited to: (a) customer communications with Honda; (b) the number of air conditioning system failures; (c) the demand for and backlog of service parts for failed air conditioning systems; (d) the legal complaints filed against Honda pertaining to defective air conditioning systems; and (e) abundance of online chatter regarding same, including with respect to CRVs specifically, as well as Honda's offers of partial coverage of failed air conditioning system repairs after expiration of warranties, Honda knew or had reason to know of the defective nature of the AC systems in Class Vehicles while in the course of marketing and selling these Class vehicles, and before any related warranties had expired.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of two Classes:

A Nationwide Class is defined as:

All persons in the United States who purchased or leased a Class Vehicle and who suffered damages as a result of the defect in the vehicle's AC System.

A New Jersey Class is defined as:

All residents of New Jersey who purchased or leased a Class Vehicle and who suffered damages as a result of the defect in the vehicle's AC System.

Excluded from the Classes are the defendant herein, any person, firm, trust, corporation, officer, director, or other individual or entity in which the defendant has a controlling interest or which is related to or affiliated with the defendant, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party. Also excluded from the classes are any persons who have had their 2017-2021 Honda CRV re-purchased by Honda, whether required by law or by agreement.

62.     The members of the Classes are so numerous that joinder of all members is impracticable. The precise number of Class members is unknown to plaintiffs at this time, but the names and addresses of the Class members can be ascertained from the books and records of Honda or its agents. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice like those customarily used in class actions arising under the federal securities laws.

63.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs have retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intend to prosecute this action vigorously.

64.     Plaintiffs' claims are typical of the claims of the other members of the Classes because Plaintiffs' and all the Class members' damages arise from and were caused by the same false and misleading representations made by or chargeable to Defendant. Plaintiffs do not have any interests antagonistic to, or in conflict with, the Classes.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

66.     Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes.  Among the questions of law and fact common to the Classes are:

(a)     Whether the widespread failure or significant problems with the AC systems in CRVs result from use of defective materials, workmanship, and/or design;

(b)     Whether Honda knew or had reason to know of the prevalence of such defects while manufacturing, marketing, and selling the CRVs, and before expiration of any related warranties;

(c)     Whether consumers could reasonably have discovered the defects prior to purchasing or leasing the Class Vehicles;

(d)     Whether the presence of such defects at the time of sale constitutes a breach of any express warranty;

(e)     Whether the presence of such defects constitutes a breach of any implied warranty of merchantability;

(f)     Whether Honda engaged in deceptive practices by marketing and selling vehicles that it knew or had reason to know contained a defective AC System;

(g)     Whether Honda was negligent in manufacturing, marketing, and selling vehicles that contained a defective AC System;

(h)     Whether Honda was unjustly enriched by manufacturing, marketing, and selling vehicles that contained a defective AC System; and

(i)     Whether Plaintiffs and Class Members suffered damages because of the transgressions described herein.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT

67.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

68.     This Claim is brought by Plaintiffs individually and on behalf of members of the alleged New Jersey Class.

69.     The marketing and branding of the Honda CRVs are advertisements within the meaning of N.J. Stat. Ann. § 56:8-1(a).

70.     The Class Vehicles are merchandise within the meaning of N.J. Stat. Ann. § 56:8-1(c).

71.     Defendant is a "person" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

72.     N.J. Stat. Ann. § 56:8-2 provides, in relevant part:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice…

73.     As explained above, Defendant knew or had reason to know of the defective nature of their products prior to the branding, marketing, and sales of those products. Defendant therefore knowingly and unconscionably concealed, misrepresented, and omitted material facts with the intent that consumers would rely on such concealments, misrepresentations, and omissions in purchasing the defective products.

74.     Defendant's concealments, misrepresentations, and omissions were material because Plaintiffs and Class members would not have purchased the products had they known of their defective nature.

75.     Pursuant to N.J. Stat. Ann. § 56:8-2.11, Defendant is liable for full refunds of all moneys acquired by means of their unlawful branding, marketing, and sales, as well as treble

damages. Plaintiffs and the Class members represented in this claim seek all relief dictated by this law, in addition to such other relief as is deemed just and proper.

## COUNT II

## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT,
## 15 U.S.C. § 2301, *et seq.*

76.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     This Claim is brought by Plaintiffs individually and on behalf of members of the alleged Nationwide Class.

78.     Plaintiffs are consumer within the meaning of 15 U.S.C. § 2301(3).

79.     Honda is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5)

80.     Plaintiffs' CRVs are consumer products within the meaning of 15 U.S.C. § 2301(1).

81.     Honda's New Vehicle Warranty of 36 months or 36,000 miles is a written warranty within the meaning of 15 U.S.C. § 2301(6).

82.     The implied warranty of merchantability is an implied warranty as defined in 15 U.S.C. § 2301(7), as modified by § 2308 and § 2304(a).

83.     As outlined above, Honda breached both the express warranty and the implied warranty of merchantability.

84.     Pursuant to 15 U.S.C. § 2310(e) Honda knew or had reason to know of the pervasive AC system issues in warranted CRVs and failed to cure its breach despite having a reasonable opportunity to do so in the length of time that such defective vehicles have been on the market and such assessment and discussion of the issues has been rampant. Plaintiffs and Class members are therefore entitled to proceed with this class action.

85.     Pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and Class members are entitled to recover from Defendant the aggregate expenses reasonably incurred in the commencement and prosecution of this action, in addition to such other relief as is deemed just and proper.

## COUNT III

## BREACH OF EXPRESS WARRANTY

86.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.     This Claim is brought by Plaintiffs individually and on behalf of members of the alleged New Jersey Class.

88.     Honda expressly warrants its vehicles for 36 months or 36,000 miles, assuring peak engineering and performance for that duration or coverage for repairs. Those warranties are breached immediately upon their enactment, due to the defective manufacturing of the AC Systems in the warranted vehicles.

89.     By failing to immediately replace the defective AC systems with AC systems that do not contain the defective materials, workmanship, and/or design, Honda fails to abide by its express warranties.

90.     Honda knew or had reason to know of the widespread defects in the Class Vehicles AC systems before the warranty period expired on those vehicles, and deliberately failed to disclose the issues to their consumers. Therefore, Honda is estopped from asserting that warranty claims are barred based on the expiration of the warranty period.

91.     While the defective manufacturing was present at the time of sale and warranty for each vehicle, the Class member purchasing the vehicle could not have discovered the defective manufacturing at that time. Had Plaintiffs and Class members known of the defective nature of the AC systems, they would not have made the purchases.

92.     Plaintiffs and Class members used the AC systems in the ordinary manner for which they were intended. The products were not altered, and no action by Plaintiffs and Class members caused nor contributed to the defects.

93.     Further, Honda's breach of the express warranty as well as the limitation periods for the warranty for the Class Vehicles are unconscionable, as Honda knew or had reason to know that the AC systems for the Class Vehicles were defective and would likely fail after the expiration of the basic warranty period of 36 months or 36,000 miles. Honda's defective manufacturing was not limited to its Civics and not limited to the AC system's condenser parts, as the Warranty Extension suggests. The unconscionable warranty period limitations are therefore unenforceable pursuant to NJ Rev Stat § 12A:2-302 (2013):

(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

94.     As a result of Defendant's breach of the express warranty, Plaintiffs and Class members suffered damages of an amount to be determined at trial.

## COUNT IV

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

95.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.     This Claim is brought by Plaintiffs individually and on behalf of members of the alleged New Jersey Class.

97.     Honda is a merchant who regularly engages in the manufacture, marketing, and distribution of vehicles. Plaintiffs and Class members purchased the Class Vehicles which were in that category. By operation of law, Honda impliedly warranted to Plaintiffs and Class members that the products were fit for their intended use.

98.     Contrary to the implied warranties, the Class Vehicles were not fit for their intended use due to their defective nature of their AC systems. Honda knew or had reason to know of the defective nature of the AC systems prior to issuing the implied warranties.

99.     While the defective manufacturing was present at the time the warranties were issued, Plaintiffs and Class members could not have discovered it at that time. At the time of purchase, Plaintiffs and Class members reasonably expected the vehicles to be fit for their intended use, and they did not receive the goods they bargained for. Had they known of the defective manufacturing, they would not have made the purchases.

100.    Plaintiffs and Class members used the AC systems in the ordinary manner for which they were intended. The products were not altered, and no action by Plaintiffs and Class members caused nor contributed to the defects.

101.    In the instances where Class members did not purchase the vehicles directly from Defendant, they are still the intended beneficiaries of the implied warranties, as the end users whom the retailers purchased the products to sell to and are therefore entitled to enforce the implied warranties against Defendant.

102.    Pursuant to the Magnuson-Moss Warranty Act, Defendant is prohibited from disclaiming or limiting the implied warranty of merchantability so as to not cover the defective AC systems.

103.     As a result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and Class members suffered damages of an amount to be determined at trial.

## COUNT V

## NEGLIGENCE

104.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

105.     This Claim is brought by Plaintiffs individually and on behalf of members of the alleged New Jersey Class.

106.     Honda owed Plaintiffs and Class Members a duty of reasonable care to ensure that the Class Vehicles would operate as reasonably expected by consumers, including the operation of the Class Vehicles' AC systems.

107.     Honda breached its duty by failing to ensure that the AC Systems were manufactured with proper materials, workmanship, and/or design, and did not suffer from any defects. Honda also breached its duty by failing to warn consumers that the AC Systems were not free of defects.

108.     As a direct and proximate result of Honda's negligence, the AC Systems in the Class Vehicles are prone to fail in the course of normal, reasonably anticipated use, and Plaintiffs and Class Members have suffered resulting damages of an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

109.     Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.     This Claim is brought by Plaintiffs individually and on behalf of members of the alleged New Jersey Class.

111.    Defendant was unjustly enriched in its distribution of defective products, at the expense of Plaintiffs and Class members. Defendant received a benefit in the form of the profits from the sales of the defective products, conferred on them by Plaintiffs and Class members. In the instances where Class members did not purchase the defective products directly from Defendant, they are still the ultimate spenders of the sales to retailers, as the end purchasers whom the retailers sold the products to in turn.

112.    Given the defective nature of the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefits conferred. As the products were unfit for their intended use, Plaintiffs and Class members did not receive the goods they bargained for.

113.    Defendant knowingly and willingly accepted and enjoyed the benefits of the sales.

114.    Plaintiffs and Class members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

## COUNT VII

## INJUNCTIVE AND DECLARATORY RELIEF

115.    Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

116.    This Claim is brought by Plaintiffs individually and on behalf of members of the alleged New Jersey Class.

117.    There is a justiciable dispute as to whether the Class Vehicle's AC System should be covered under Warranty.

118.    By virtue thereof, Plaintiffs seek a declaratory judgment precluding Honda from denying coverage of repairs to defective AC Systems in Class Vehicles for at least ten years in service.

119.    The remedy sought herein is for class members who still own or have ongoing leases for their Class Vehicle. The remedy sought herein is authorized under the New Jersey Consumer Fraud Act which grants Plaintiffs the right to seek injunctive or declaratory relief for violations of such statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment and preliminary and permanent relief, including injunctive relief, against Defendant, as follows:

A.      An injunction requiring Honda to extend the warranty on the Class Vehicle's AC systems to ten years, covering all AC parts that are subject to the defective manufacturing, and eliminating the requirement of a diagnostic fee in order to provide warranty coverage;

B.      Reimbursement for all costs incurred by Plaintiffs and Class Members in the course of getting the AC System in their Class Vehicle diagnosed and/or repaired;

C.      Awarding Plaintiffs and Class Members the cost of this Action, including reasonable legal fees and expert fees; and

D.      Granting such further and other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury.

Dated:  February 03, 2022

Respectfully submitted by:

**LONGMAN LAW, P.C.**

_____

Howard T. Longman, Esq.
354 Eisenhower Parkway, Suite 1800
Livingston, New Jersey 07039
Tel: (973) 994-2315
Fax: (973) 994-2319
Email: hlongman@longman.law

**SLYNE LAW LLC**
Patrick Slyne, Esq.
800 Westchester Ave., N641
Rye Brook, NY 10573
Tel: (914) 279 7000
Fax: (914) 653 8122
Email: patrick.slyne@slynelaw.com

*Attorneys for Plaintiffs*